UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MELISSA F. MCCLENDON, | ) | Case No.: 12-14153-JDW |
| d/b/a MCLENDON SOD FARM, | ) | |
| | ) | |
| Debtor. | ) | Chapter 12 |
| | | |
| IN RE: | ) | |
| | ) | |
| KENNETH SCOTT MCLENDON, | ) | Case No. 12-14154-JDW |
| d/b/a MCLENDON SOD FARM, | ) | |
| | ) | |
| Debtor. | ) | Chapter 12 |

MEMORANDUM OPINION
AND SUPPLEMENTAL ORDER GRANTING MOTIONS TO SELL

These matters came before the Court for hearing on August 28, 2013, on the Motions to Sell property pursuant to 11 U.S.C. §§ 363 and 1206 filed by Melissa F. McClendon and Kenneth Scott McClendon (collectively, the "Debtors") in their respective bankruptcy cases (the "Motions"). (M.M. Dkt. #84; K.M. Dkt. # 84).[1] Appearing at the hearing were Glenn H. Williams, attorney for the Debtors, Todd Johns, attorney for Harold J. Barkley, the standing chapter 12 trustee appointed pursuant to 28 U.S.C. §586(b) (the "Trustee"), and Edward P. Connell, Jr., attorney for creditor Covenant Bank. This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in U.S.C. § 157(b)(2)(A), (M), and (O). The

---

[1] The Debtors are divorced but continue to share ownership of certain assets and remain jointly liable for certain debts. The issues raised in the Motions and objections thereto are identical and will be resolved together herein. Citations to the docket in Ms. McLendon's case will be prefaced with "M.M.," and citations to the docket in Mr. McLendon's case will be prefaced with "K.M."

1

Court has considered the pleadings, the arguments of counsel, and the law, and finds and concludes as follows.

## I.  FINDINGS OF FACT[2]

The facts in these matters are undisputed. The Debtors are a formerly-married couple who continue to jointly own and operate a sod farm. On October 2, 2012, the Debtors filed separate chapter 12 bankruptcy petitions, and on June 5, 2013, orders were entered confirming both Debtors' chapter 12 plans (M.M. Dkt. # 77; K.M. Dkt. #77). After confirmation of the plans, the Debtors determined that it was possible to operate their sod farm and generate sufficient income to pay operating expenses, living expenses, and their secured creditors without farming a portion of their acreage. The Debtors subsequently reached an agreement with a buyer, Eddie Reynolds, to purchase a portion of their land in Yalobusha County, Mississippi (the "Property"), for the total sum of $320,000.00.00. The Trustee did not participate in the decision to sell, the marketing of the Property, or the sale negotiations. The Property is encumbered by two deeds of trust held by Covenant Bank. The collateral for Covenant Bank's secured claims includes the Property, as well as additional real property and personal property. In the confirmed plans, Covenant Bank's secured claim is valued at $1,043,000.00, and is to be amortized over 20 years at 4% interest, but paid in quarterly payments with a balloon payment due in five years. The plans provide for payments to the Trustee for only 36 months, so the balloon payment is due to Covenant Bank two years after the completion of the plans.

In their Motions, the Debtors propose to sell the Property to Reynolds and apply the net proceeds, after deducting closing costs (the "Proceeds"), to Covenant Bank's secured claim. The sale of the Property was not contemplated in the Debtors' chapter 12 plans, and the sale of the

---

[2] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

Property does not modify any of the payments required to be made to the Trustee, to Covenant Bank or otherwise under the terms of the confirmed plans. Further, the Debtors have not filed motions to modify their plans, so the amount of compensation to be received by the Trustee throughout the term of the plans is unchanged. Covenant Bank supports the Motions, and the only objections to the Motions were filed by the Trustee. (M.M. Dkt. #86; K.M. Dkt. #86).

The Trustee raised two bases for his objections: first, that additional information as to the relationship between the Debtors and the buyer should be disclosed, and second, that the Proceeds should be tendered to the Trustee and payment to Covenant Bank should be net of Trustee's compensation and expenses, which would total ten percent of the Proceeds. At the hearing, the Trustee indicated that he was satisfied with the arms-length nature of the transaction. Thus, the Trustee's only remaining objection was not to the terms of the sale, but rather that the Trustee would not receive ten percent of the Proceeds. Both the Debtors and Covenant Bank deny that the Trustee is entitled to compensation and expenses from the Proceeds. Covenant Bank agreed to the sale of the Property under the proposed terms and agreed to release its lien on the Property at closing. Covenant Bank also indicated that its agreement to the sale of the Property was not contingent upon the outcome of the Trustee's request for compensation and expense. Accordingly, at the conclusion of the hearing on the Motions, the Court granted the Motions, but took the issue of the Trustee's entitlement to compensation from the Proceeds under advisement and ordered that ten percent of the Proceeds be held in escrow, pending the Court's ruling on the Trustee's entitlement to compensation from the Proceeds. An Agreed Order Granting Motion to Sell was entered by the Court in the Debtors' respective cases on September 14, 2013, authorizing the sale of the Property pursuant to 11 U.S.C. §§ 363 and 1206. (the "Sale Orders") (M.M. Dkt. #92; K.M. Dkt. #92). Accordingly, the only issue before the

Court is whether or not the Trustee is entitled to compensation from the Proceeds of the §§ 363 and 1206 sale of the Property, when the sale is outside of the plan and without the participation of the Trustee.

## II.   CONCLUSIONS OF LAW

### A. Statutory Calculation of Chapter 12 Trustee Compensation.

A chapter 12 standing trustee has a variety of duties, including being accountable for all property received, appearing and being heard at any hearing that concerns the sale of property of the estate, and ensuring that a debtor makes timely payments required by a confirmed plan. 11 U.S.C. § 1202(b)(1),(3), and (4). In addition, "except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1226(c). The annual compensation of a standing chapter 12 trustee is fixed by the Attorney General of the United States in consultation with a United States Trustee, pursuant to a set basic pay rate, and a percentage fee not to exceed ten percent of the payments made under the plan for aggregate payments not exceeding $450,000.000 and three percent of payments made over $450,000.00. 28 U.S.C. § 586(e)(1). The statutory method for calculating compensation for a chapter 12 trustee is therefore not based upon the specific services rendered in a particular case, or the time and effort expended by the trustee in accomplishing his statutory duties. It is calculated solely using the formula provided in the statute.

A standing trustee is not permitted to collect additional compensation or reimbursement under § 326 of the Bankruptcy Code. The only compensation a standing chapter 12 trustee may receive is the percentage fee provided for by 28 U.S.C. § 586(e). 11 U.S.C. § 326(b); *In re Ward*, 132 B.R. 417, 418 (Bankr. D. Neb. 1991). "Before or at the time of each payment to creditors under the plan, there shall be paid . . . the percentage fee fixed" for the trustee. 11

4

U.S.C. § 1226(b)(2). The statutory formula for determining payment of compensation and expenses renders the fee-setting provisions under 11 U.S.C. § 326 inapplicable to a standing chapter 12 trustee.[3] Section 326(b) provides:

> In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses . . . of a standing trustee appointed under section 586(b) of title 28. . . .

11 U.S.C. § 326(b). Accordingly, the Court may not award the Trustee compensation beyond what he is entitled to receive under 28 U.S.C. § 586(e). *Michel v. Beard (In re Beard)*, 45 F.3d 113 (6th Cir. 1995).

The Trustee argues that he is entitled to statutory compensation on any payments made on impaired claims during the life of the plans, whether or not such payments are ongoing or lump sum, and whether or not such payments were contemplated by the plans. In these cases, the Trustee is seeking compensation from the Proceeds of a sale of a secured creditor's collateral that was not provided for in the confirmed plans. There is no reported case law that addresses this issue in the chapter 12 context. Most of the reported cases regarding chapter 12 trustee compensation concern whether a debtor can make ongoing payments directly to a secured creditor rather than through the trustee, and, if so, whether the trustee is entitled to a statutory fee on those direct payments. While there is a split of authority on this issue, the Trustee's entitlement to compensation on ongoing payments is not the issue in the Debtors' cases. *See*, *Beard*, 45 F.3d 113 and *Wagner v. Armstrong (In re Wagner)*, 36 F.3d 723 (8th Cir. 1994)(allowing direct payments); *Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801 (9th Circ. 1992)(prohibiting direct payments). All ongoing payments in the cases at hand will continue to be made to the Trustee with the Trustee deducting his statutory compensation and distributing

---

[3] Pursuant to the terms of 11 U.S.C. § 326(b), this restriction applies only to standing trustees appointed under 28 U.S.C. § 586(b), not a trustee appointed on an *ad hoc* basis under 11 U.S.C. § 1202(a).

the payments to the various creditors. The issue of direct payments under a plan and trustee compensation thereon is not before the Court at this time. *See, In re Moore*, 2012 WL 6614376 (Bankr. N.D. Miss. 2012)(not establishing a blanket rule, but holding that direct payments were not allowed under the particular facts and circumstances of the case).

The compensation that the Trustee is entitled to is "ten percent of the payments made *under the plan*." 28 U.S.C. § 586(e)(1)(B)(ii)(I)(emphasis added). Further, the trustee is entitled to collect his percentage fee "from all payments *received by* [him] *under plans* in the cases under chapter 12 . . . for which [he] serves as standing trustee." 28 U.S.C. § 586(e)(2)(emphasis added). This means that the Trustee is entitled to a statutory fee of 10% of the first $450,000 in aggregate payments "that the debtor transfers through the trustee to creditors under the reorganization plan[s'] terms." *Beard*, 45 F.3d at 115. The Trustee argues that all payments to secured creditors whose claims are impaired by a plan are "payments made under the plan," whether disbursed by the trustee or the debtor or otherwise, and thus trustee's fees are owing on these transactions. However, pursuant to the terms of the Sale Orders, not only are the Proceeds not received "under the plans," because the sales were not even contemplated by the plans, the Proceeds never flowed through the Trustee's office. So, not only are the Proceeds not payments made "under the plan," they are also not "received by [or obviously distributed by] the Trustee under the plans." *Wagner*, 36 F.3d at 726. Accordingly, the Trustee is not entitled to receive a percentage fee from the Proceeds.

The Trustee argues that he is entitled to his statutory compensation from any payment made to a creditor on any claim, whether or not such payment is contemplated by the terms of the confirmed plan or not, whether or not such payment is disbursed by the Trustee's office, and whether or not such payment is on account of a § 363 or § 1206 sale of collateral outside of the

plan, free of the secured creditor's lien. As set forth above, the Trustee's entitlement to compensation is fixed by statute as a percentage of the money received by the Trustee pursuant to a chapter 12 plan, and there is no basis for the Court to supplement this fee, regardless of the time or effort expended (or not) by the Trustee. In a case relied on by the Trustee, the court ordered the payment of the trustee's percentage fee on a sale of a creditor's collateral (cattle) which was not contemplated by the confirmed plan. *In re C.A. Jackson Ranch Co.*, 181 B.R. 552 (Bankr. E.D. Okla. 1995). In that case, the debtor did not request permission from the court nor from the secured creditor to sell the cattle, and the debtor used the proceeds from the unauthorized sale of the cattle to make the payments due to the secured creditor under the terms of the confirmed plan. *Id.* That is not the case here.

Moreover, the Trustee currently does receive ten percent of the payments he distributes to all creditors on the Debtors' behalf pursuant to the terms of the Debtors' confirmed plans, and he will continue to receive his statutory fee on future payments pursuant to the plan. The Debtors indicated at the hearing on the Motions that they do not intend to seek modification of the confirmed plans to decrease the quarterly payments to Covenant Bank. The Trustee argues that the sale modifies the confirmed plans in that it changes the amount of remaining debt under the confirmed plans, and, presumably, somehow that transforms the Proceeds into payments made under the plan. No authority was presented supporting this position. This is not a case where the creditor had one item of collateral sold, the entire debt satisfied, and the payment to that creditor then deleted from the plan. The plan payments will stay the same in these cases because Covenant Bank has other collateral. Although the amount of the balloon payment the Debtors must pay to Covenant Bank after 5 years will be reduced by the amount of the Proceeds, because the Debtors' plans are 36-month plans, the Trustee will not receive compensation on the balloon

7

payment anyway. Thus, the Trustee will receive exactly the same compensation he was entitled to receive when the plans were confirmed, because the plan payments remain unchanged. Any additional payment to the Trustee would be a windfall not permitted by the statute.

**B. Surcharge.**

Any percentage fee deducted from the Proceeds comes directly out of the payment due to Covenant Bank in partial satisfaction of its secured claim. This is materially different than trustee compensation being paid from ongoing payments when the Debtor retains the asset and the creditor retains its lien. In consummating the sale of the Property, Covenant Bank must forever release its deeds of trust on the Property, and the payment of the Proceeds to Covenant Bank is the only value Covenant Bank will ever realize from that collateral. Allowing the Trustee to take ten percent of those Proceeds is effectively a surcharge against Covenant's Bank collateral.

Section 506(c) of the Bankruptcy Code provides that a "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000)(not reaching the issue of possible derivative standing). Only a trustee or a debtor-in-possession may seek a surcharge against a creditor's collateral. *Id.* Surcharge expenses "are paid first out of the proceeds of the sale [of collateral], before a secured creditor is paid." *United States v. Federal Deposit Insurance Corporation*, 899 F.Supp. 50, 55 (D.R.I.1995). The party seeking recovery on a surcharge claim must prove that "(1) The expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefited from the expenses." *New Orleans Public Service, Inc. v. First Federal Savings and Loan Ass'n of Warner Robins, Georgia (In re Delta Towers, Ltd.)*, 924 F.2d

8

74, 76 (5th Cir. 1991)(citing *In re Trim-X, Inc.*, 695 F.2d 296, 299 (7th Cir. 1982)). In these cases, the Trustee did not expend any money or effort in disposing of the Property, so any claim for a surcharge would fail. In fact, the Trustee was not involved in the sale at all. The Trustee's attempt to obtain his statutory fee from the Proceeds, if successful, would have resulted in a windfall to the Trustee at the expense of Covenant Bank and would be tantamount to an impermissible surcharge under § 506(c).

### III. CONCLUSION

The Trustee is not entitled to receive a percentage of the Proceeds resulting from the sale of the Property, when that sale was not conducted pursuant to the terms of, nor contemplated by, the confirmed chapter 12 plans, because the Proceeds are not payments received under the plans within the meaning of 28 U.S.C. § 586(e)(2). The Court does not express any opinion in these cases as to whether or not a chapter 12 debtor may make plan payments on ongoing secured obligations directly to secured creditors during the life of the plan, whether or not the Trustee is entitled to compensation on any such ongoing payments on secured debt if so, or whether or not the Trustee would be entitled to compensation on the proceeds of a §§ 363 and 1206 sale of property conducted pursuant to the terms of a chapter 12 plan. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Proceeds held in escrow pursuant to the Sale Orders shall be paid over to Covenant Bank to be applied to its secured claim.

SO ORDERED on October _18_, 2013.

Jason D. Woodard
United States Bankruptcy Judge